1
2
3
4
5

6         UNITED STATES DISTRICT COURT
          WESTERN DISTRICT OF WASHINGTON
7                    AT SEATTLE

8  BEN S. SACKETT,                                    NO. C12-5353-TSZ-JPD

9              Plaintiff,

10       v.                                           REPORT AND
                                                      RECOMMENDATION
11  CAROLYN W. COLVIN, Acting
   Commissioner of Social Security,[1]
12
               Defendant.
13

14       Plaintiff Ben S. Sackett appeals the final decision of the Commissioner of the Social

15  Security Administration ("Commissioner") which denied his applications for Disability

16  Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17  of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18  administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that

19  the Commissioner's decision be REVERSED and REMANDED for further administrative

20  proceedings.

21

22       [1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social
    Security. Therefore, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure,
23  Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this
    suit. **The Clerk of Court is directed to update the docket accordingly, and the parties are
24  ordered to update the caption on all future filings with the Court.**

REPORT AND RECOMMENDATION - 1

I.      FACTS AND PROCEDURAL HISTORY

Plaintiff was born in 1982 and was 25 years old on the alleged disability onset date. Administrative Record ("AR") at 170, 174.  He has an 8th grade education.  AR at 98.  His past work experience includes employment as an equipment delivery/mechanic, flagger, painter/drywaller, plumber, and warehouse worker.  AR at 29, 192, 202.  Plaintiff was last gainfully employed on May 31, 2008.  AR at 191.

On August 11, 2008, plaintiff filed applications for SSI and DIB, alleging an onset date of June 1, 2008.  AR at 170-80.  Plaintiff asserts that he is disabled due to physical and mental impairments including depression, cognition disorder, polysubstance abuse, cyclothymic disorder, intermittent explosive disorder, panic disorder with agoraphobia, attention deficit disorder, attention deficit hyperactivity disorder, psychosis, posttraumatic stress disorder, schizoaffective disorder, and impulse control disorder.  AR at 191; Dkt. No. 15 at 5-6.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 106-09.  Plaintiff requested a hearing which took place on August 31, 2010.  AR at 37-105.  On October 29, 2010, the ALJ issued a decision finding plaintiff not disabled.  AR at 19-31. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On April 23, 2012, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. No. 1.

II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

REPORT AND RECOMMENDATION - 2

### III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

REPORT AND RECOMMENDATION - 3

## IV. EVALUATING DISABILITY

As the claimant, Mr. Sackett bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[2] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments,

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

V.     DECISION BELOW

On October 29, 2010, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2012.

2. The claimant has not engaged in substantial gainful activity since June 1, 2008, the alleged onset date.

3. The claimant has the following severe impairments: right knee chondromalacia tricompartmental OA, status-post arthroscopy, status post lumbar contusions with transverse fractures, depression, cognition disorder, and polysubstance abuse.

REPORT AND RECOMMENDATION - 5

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can only stand/walk two hours cumulatively in an 8-hour day with no sitting restrictions; only occasional stooping, crouching, kneeling, balancing, crawling; can frequently climb ramps and stairs; must never climb ladders, ropes, or scaffolds; must avoid concentrated exposure to extreme cold, vibrations, and hazards; he can understand[,] remember and carry out repetitive 1-4 step tasks; he should have only superficial and occasional contact with the general public. Additionally, the claimant needs visual instruction initially to learn job tasks. For purposes of the claimant's residual functional capacity, superficial means that the claimant is not having to respond to the demands or requests of the public, but he can refer those demands to others for response. Superficial also means that the claimant is able to work in the same room or vicinity as the general public, and greetings are superficial. Furthermore, the undersigned finds that, as of three months status post arthroscopy, the claimant has the same residual functional capacity as outlined above, except he has no sit/stand or walk restrictions.

6. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2008, through the date of this decision.

AR at 21-31.

## VI.     ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ conducted a legally sufficient analysis of Plaintiff's impairments at Step Two of the sequential evaluation process.

2. Whether the ALJ gave legally sufficient reasons for the weight given to the opinions of the examining psychologists.

3. Whether the ALJ's residual functional capacity assessment captured all of the limitations opined by the examining psychiatrist whose opinion the ALJ gave "great" weight.

4. Whether the ALJ erred by failing to discuss the lay witness statement.

5.  Whether the errors in the administrative law judge's decision are harmful and warrant remand for further proceedings or for payment of benefits.

Dkt. No. 15 at 1-2.

## VII.   DISCUSSION

A.   <u>The ALJ Erred in Her Evaluation of the Medical Evidence</u>.

*1.   Legal Standards for Reviewing Medical Evidence*

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "clear and convincing reasons." *Id.* at 830-31. Where contradicted, a treating or examining doctor's opinion may not be rejected without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state [her] conclusions. "[She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Id.*

*2.   The ALJ Erred in Evaluating the Opinions of Examining Psychologists Norma L. Brown, Ph.D., and Daniel Neims, Psy.D.*

On July 6, 2005, Norma L. Brown, Ph.D., performed a consultative psychological evaluation of the plaintiff for the Washington State Department of Social and Health Services

REPORT AND RECOMMENDATION - 7

1  ("DSHS"). AR at 258-71. Dr. Brown opined that plaintiff's ability to respond appropriately to
2  and tolerate the pressures and expectations of a normal work setting was severely limited. AR
3  at 260. She also found plaintiff's abilities to learn new tasks; exercise judgment and make
4  decisions; relate appropriately to coworkers and supervisors; and control physical movements
5  and maintain appropriate behavior were markedly limited. *Id*. In addition, she found
6  plaintiff's abilities to understand, remember and follow complex instructions; perform routine
7  tasks; and interact appropriately with the public were moderately limited. *Id*. Specifically,
8  plaintiff was found to have major problems understanding directions for serial 3's, limited
9  score on backward digits, significantly impaired Trailmaking, volatile temper, and very low
10 tolerance for frustration. AR at 260. Dr. Brown noted plaintiff was very eager to pass the
11 General Educational Development ("GED") testing and work, but needed to get help first to
12 stabilize his mood. AR at 261. She diagnosed plaintiff with cyclothymic disorder, intermittent
13 explosive disorder, panic disorder, and attention deficit hyperactivity disorder ("ADHD"). AR
14 at 259.

15   On September 15, 2008, Daniel Neims, Psy.D., performed a DSHS evaluation of
16 plaintiff and completed an evaluation form diagnosing him with schizoaffective disorder,
17 impulse control disorder, panic disorder, and ADHD. AR at 393-403. Dr. Neims opined that
18 plaintiff's abilities to exercise judgment and make decisions; relate appropriately to co-workers
19 and supervisors; interact appropriately with the public; respond appropriately to and tolerate
20 the pressure and expectations of a normal work setting; and control physical movements and
21 maintain appropriate behavior were markedly limited. AR at 398. He also found plaintiff's
22 abilities to understand, remember and follow complex instructions; learn new tasks; perform
23 routine tasks; and care for himself were moderately limited. *Id*. Dr. Neims noted plaintiff was
24

"chronically mentally ill," and "impaired from sustained gainful employment."  AR at 399, 402.

On May 14, 2009, Dr. Brown performed another DSHS examination and completed an evaluation form diagnosing plaintiff with schizoaffective disorder, intermittent explosive disorder, panic disorder, and ADHD.  AR at 404-15.  Dr. Brown again opined that plaintiff's ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting was severely limited.  AR at 260.  She also opined plaintiff's abilities to exercise judgment and make decisions; relate appropriately to coworkers and supervisors; interact appropriately with the public; and control physical movements and maintain appropriate behavior were markedly limited.  *Id*.  In addition, she found plaintiff's abilities to understand, remember and follow complex instructions; learn new tasks; perform routine tasks; and care for himself were moderately limited.  *Id*.  Dr. Brown noted plaintiff generally scored well on cognitive testing but poorly on Trailingmaking, was paranoid, panics in public, and is very socially isolated.  AR at 406.

On March 18, 2010, Dr. Brown performed another DSHS examination of plaintiff, and completed an evaluation form diagnosing him with schizoaffective disorder, intermittent explosive disorder, panic disorder, ADHD, and posttraumatic stress disorder ("PTSD").  AR at 416-29.  Dr. Brown observed plaintiff had difficulty dealing with criticism, severe social anxiety, explosive temper, and problems relating to others.  AR at 417-18.  Dr. Brown opined that plaintiff's abilities to exercise judgment and make decisions; interact appropriately with the public; and respond appropriately to and tolerate the pressures and expectations of a normal work setting were severely limited.  AR at 419.  She also opined plaintiff's abilities to relate appropriately to coworkers and supervisors, and to maintain appropriate behavior in a work setting were markedly limited.  *Id*.  In addition she found plaintiff's abilities to understand,

REPORT AND RECOMMENDATION - 9

remember and follow complex instructions; learn new tasks; perform routine tasks; and care for himself were moderately limited. *Id.*

The ALJ considered the opinions of Dr. Brown and Dr. Neims, although she referred to Dr. Neims as Dr. Nelms. AR at 22-23, 29. However, the ALJ assigned "little weight" to Dr. Brown's and Dr. Neims's opinions, stating only that their "opinions are generally inconsistent with the medical record as a whole as well as with the claimant's statements at the hearing." AR 29. The Court agrees with plaintiff that the ALJ's reasons for disregarding the opinions of Dr. Brown and Dr. Neims were not specific, legitimate or supported by substantial evidence in the record.

Although the ALJ cited Dr. Brown's and Dr. Neims's opinions at step two, AR at 22-23, the ALJ provided nothing more than a bare assertion that the doctors' opinions are "inconsistent with the medical record as a whole" in her discussion of the medical evidence. As indicated above, when an ALJ seeks to discredit a medical opinion, she must explain why her own interpretations, rather than those of the doctor, are correct. *See, e.g., Reddick*, 157 F.3d at 725. "[C]onclusory reasons will not justify an ALJ's rejection of a medical opinion." *Regennitter v. Soc. Sec. Comm'r*, 166 F.3d 1294, 1299 (9th Cir. 1999).

The ALJ's other reason for rejecting Dr. Brown's and Dr. Neims's opinions was that she found them to be inconsistent with plaintiff's statements at the hearing. AR at 29. Again, the ALJ failed to identify a single statement in plaintiff's testimony that was not consistent with a particular opinion from Dr. Brown or Dr. Neims. This is not a specific and legitimate reason to discredit the examining doctor's opinions regarding plaintiff's functional limitations. Remand is warranted for the ALJ to reevaluate the opinions of Dr. Brown and Dr. Neims.[3]

---

[3] In light of the fact that the ALJ must reevaluate the opinions of Dr. Brown and Dr. Neims on remand, it is unnecessary to determine whether the ALJ also erred in evaluating the

REPORT AND RECOMMENDATION - 10

B. The ALJ Erred in Failing to Include All of the Limitations Identified by V. Varu, M.D., in the RFC Assessment.

On July 17, 2008, treating physician V. Varu, M.D., completed a DSHS evaluation of the plaintiff, diagnosing her with major depression and psychosis. AR at 288-91. Dr. Varu opined that plaintiff had marked limitations in his abilities to interact appropriately in public contacts, and respond appropriately to and tolerate the pressure and expectations of a normal work setting. AR at 290. In addition, Dr. Varu opined that plaintiff had moderate limitations in his abilities to exercise judgment and make decisions; relate appropriately to co-workers and supervisors; and control physical or motor movements and maintain appropriate behavior. *Id*.

The ALJ found Dr. Varu's opinions should be given "great weight."[4] AR at 28. Plaintiff argues that the ALJ erroneously failed to include in her RFC assessment and hypothetical question to the vocational expert ("VE") Dr. Varu's opinions regarding plaintiff's limitations in his abilities to (1) relate appropriately to coworkers and supervisors; (2) control his physical movements and maintain appropriate behavior; and (3) respond appropriately to and tolerate the pressure and expectations of a normal work setting. Dkt. No. 15 at 12-14.

A claimant's RFC is an assessment of the claimant's ability to do physical and mental work activities on a sustained basis despite the claimant's limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). In determining a claimant's RFC, an ALJ must assess all of the

---

doctors' diagnoses of mental disorders at step two, as alleged by the plaintiff. Dkt. No. 15 at 5-7. However, on remand, the ALJ is directed to reevaluate the severity of plaintiff's mental impairments, as well as the combined effect of all of plaintiff's impairments, at step two. For example, the ALJ should discuss whether Dr. Brown's diagnoses of schizoaffective disorder and intermittent explosive disorder, and Dr. Neims's diagnoses of panic disorder and ADHD, constitute colorable mental impairments, and if so, evaluate them in compliance with the applicable regulations.

[4] The ALJ incorrectly referred to treating physician Dr. Varu as consultative examiner Dr. Varm in her decision. AR at 22. The ALJ also incorrectly stated that Dr. Varu opined plaintiff "would only be impaired for three months," however, the record shows Dr. Varu opined plaintiff would be impaired for a minimum of three months and the maximum length was "unknown." AR at 22, 291.

REPORT AND RECOMMENDATION - 11

relevant evidence to determine what capacity the claimant has for work. *See id*. Similarly, hypothetical questions that an ALJ poses to a vocational expert ("VE") to determine what work a claimant can perform "must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." *Thomas*, 278 F.3d at 956 (quoting *Flores v. Shalala*, 49 F.3d 562, 570–71 (9th Cir. 1995)).

Here, the ALJ assessed plaintiff's RFC without discussing Dr. Varu's opinions regarding plaintiff's limitations (1) relating appropriately to coworkers and supervisors; (2) controlling his physical movements and maintaining appropriate behavior; or (3) responding appropriately to and tolerating the pressure and expectations of a normal work setting. Because the ALJ's decision afforded "great weight" to Dr. Varu's opinion, yet failed to explain why some of the limitations were not included in the RFC assessment, the Court finds that the ALJ erred in not providing specific and legitimate reasons for rejecting Dr. Varu's opinions.

The Commissioner argues that the ALJ properly considered Dr. Varu's opinions. The Commissioner asserts that plaintiff's limitations in his abilities to tolerate the pressures and expectations of a normal work setting and to interact with co-workers and supervisors both stem from his difficulties learning new tasks because of his difficulty retaining verbal information. The Commissioner contends that the ALJ accommodated these limitations by minimizing the workplace pressures, and thus the negative interactions with co-workers and supervisors, by limiting plaintiff to work with no more than repetitive four-step tasks, visual instruction, and superficial and occasional contact with the public. Based on this tortured explanation, the Commissioner argues all of the limitations found by Dr. Varu were included in the ALJ's RFC assessment. Dkt. No. 19 at 10-11.

The Commissioner's argument that Dr. Varu's opinions are already accounted for in the ALJ's RFC assessment – which includes no limitations with respect to co-workers or

supervisors – is unpersuasive.  Neither Dr. Varu nor the ALJ found plaintiff's limitations in his abilities to relate appropriately to coworkers and supervisors, control his physical movements and maintain appropriate behavior, or respond appropriately to and tolerate the pressure and expectations of a normal work setting stemmed from his difficulties learning new tasks.  The Commissioner has cited no authority, and the Court is aware of none, holding that a limitation to repetitive four-step tasks, visual instruction, and superficial and occasional contact with the public, automatically encompasses such limitations.

Dr. Varu opined that plaintiff had limitations in his abilities to relate appropriately to coworkers and supervisors, control his physical movements and maintain appropriate behavior, and respond appropriately to and tolerate the pressure and expectations of a normal work setting.  Each of the limitations found were separate limitations which the ALJ should have included in assessing plaintiff's RFC given the great weight the ALJ accorded the doctor's opinions.  On remand, the ALJ shall either explain why she rejects Dr. Varu's opinions or include the limitations in the RFC assessment and the hypothetical posed to the VE.

C.    <u>The ALJ Erred by Failing to Discuss the Lay Statement of Tamora Sackett</u>.

Plaintiff argues that the ALJ erred by failing to discuss the written statement of Tamora Sackett, plaintiff's mother.  AR at 250-52.  Ms. Sackett noted that plaintiff has difficulty organizing his thoughts, is paranoid, has panic attacks both at home and in public, and has difficulty getting along with others, particularly authority figures.  AR at 251-52.  Ms. Sackett did not believe plaintiff was capable of living on his own or taking care of himself.  AR at 252.

Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence.  *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The ALJ can reject the testimony of lay witnesses only upon giving reasons germane to each witness.  *See Smolen*, 80 F.3d at 1288-89."[W]here the ALJ's error lies in a failure to

REPORT AND RECOMMENDATION - 13

properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r*, 454 F.3d 1050, 1056 (9th Cir. 2006).

The Commissioner concedes that the ALJ did not discuss Ms. Sackett's statement, but argues that any error was harmless, since no reasonable ALJ could reach a different disability determination. Dkt. No. 19 at 12. The Commissioner argues that Ms. Sackett's statement details plaintiff's medical conditions and educational experiences during his childhood, and has no relevance to plaintiff's limitations from his medically determinable impairments during the period under review. The Court disagrees with the Commissioner.

Ms. Sackett's statements that plaintiff has difficulty organizing his thoughts, is paranoid, anxious, and has difficulty getting along with others, are consistent with the opinions of Drs. Brown, Neims, and Varu, which were improperly rejected by the ALJ. Accordingly, the Court finds that the error in reviewing the lay testimony is not harmless. *See Stout*, 454 F.3d at 1056. The lay testimony should be evaluated anew following remand of this matter.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further administrative proceedings. On remand, the ALJ should: (1) reevaluate the severity of plaintiff's mental impairments, as well as the combined effect of all of plaintiff's impairments, at step two, (2) reassess the medical evidence, including the opinions of Dr. Brown, Dr. Neims, and Dr. Varu, (3) evaluate Ms. Sackett's testimony, (4) reassess plaintiff's RFC as appropriate, and (5) proceed to steps four and five of the sequential evaluation process utilizing a vocational expert as deemed appropriate.

1    A proposed order accompanies this Report and Recommendation.

2    DATED this 9th day of April, 2013.

*/s/ James P. Donohue*
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15